IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KELSEY SPRONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 3:17-cv-03101-SEM-TSH |
| | ) | |
| CHRIS ELLIOTT, Individually and as a | ) | **JURY DEMANDED** |
| police officer for the City of White Hall, | ) | |
| POLICE CHIEF LUKE COULTAS, | ) | |
| Individually and in his official capacity | ) | |
| as Chief of Police for the City of White Hall, | ) | |
| POLICE CHIEF KYLE ROBINSON, | ) | |
| Individually and in his official capacity | ) | |
| As Chief of Police for City of Roodhouse, | ) | |
| JEREMY GWARTNEY, Individually and | ) | |
| as a police officer for the City of Roodhouse | ) | |
| CITY OF ROODHOUSE, ILLINOIS, and | ) | |
| CITY OF WHITE HALL, ILLINOIS. | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Comes Now, KELSEY SPRONG, by and through her attorneys, The Unsell Law Firm,

and in support of her First Amended Complaint against Defendants, CHRIS ELLIOTT, LUKE

COULTAS, KYLE ROBINSON, JEREMY GWARTNEY, CITY OF ROODHOUSE, and CITY

OF WHITE HALL, and states as follows:

### The Parties

1.    That at all times herein relevant, Plaintiff, Kelsey Sprong, was a resident of Roodhouse,

Greene County, Illinois.

2.    Plaintiff has two children, Holly Long and Andrew Long, Jr.

3.    At all times relevant to this Complaint, Defendants Elliott, Coultas, Robinson, and

Gwartney were police officers.

4. At all times relevant to this Complaint, Defendants Robinson and Gwartney were employed with Defendant City of Roodhouse, specifically the Roodhouse Police Department.

5. At all times relevant to this Complaint, Defendant Robinson was the Chief of Police for Defendant City of Roodhouse's police department. Defendant Robinson is sued in his official and individual capacity.

6. Defendant Gwartney is sued in his individual capacity, and when so noted, in his capacity as an agent of Defendant City of Roodhouse.

7. At all times relevant, Defendant Elliott was employed by Defendant City of White Hall, specifically, the White Hall Police Department. Defendant Elliott is sued in his individual capacity and when noted, as an agent of Defendant City of White Hall and Roodhouse.

8. At all times relevant to this Complaint, Defendant Coultas was the Chief of Police for Defendant City of White Hall's Police Department. Defendant Coultas is sued in his official and individual capacity.

9. At all times relevant, Defendant Gwartney was acting as a uniformed officer with Defendant City of Roodhouse's police department and acting under color of law.

10. At all times relevant, Defendant Elliott was acting as a uniformed officer with Defendant City of White Hall's police department and acting under color of law.

11. At all times relevant, Defendant Elliott was acting on behalf of Defendant City of Roodhouse and its police department.

12. At all times relevant Defendant Robinson was a final policy maker for Defendant City of Roodhouse.

13. At all times relevant Defendant Coultas was a final policy maker for Defendant City of White Hall.

14. That at all times herein relevant, Defendants, City of Roodhouse and City of White Hall, were municipalities incorporated in Greene County, Illinois.

### Events Leading Up to the Wrongful Arrest

15. On September 6, 2016, Plaintiff and the father of her children, Andrew Long, came home to discover their electricity had been shut off for non-payment.

16. Realizing the couple had two small children to care for, Plaintiff immediately took action and directed Mr. Long to take the children to Jeffrey Hazelwood's home for the evening so the minor children would be in a home with electricity.

17. Mr. Long took the children as directed.

18. Prior to leaving, Plaintiff informed Mr. Long and the children she wanted to go for a walk and would come to Mr. Hazelwood's home thereafter.

19. After the children and Mr. Long arrived at Mr. Hazelwood's home, the three settled in for the evening.

20. Sometime later, Plaintiff's youngest child, Holly Long, got out of Mr. Hazelwood's home.

21. After discovering Holly Long was missing, the adults in the home began looking through the home for Holly Long.

22. When Holly Long could not be found in the home, the adults began looking outside the home and around the house of Mr. Hazelwood.

23. When Holly Long could not be found in the immediate vicinity around the home, the adults widened their search.

24. Ms. Buck, who was at the home of Mr. Hazelwood, agreed to go to the Roodhouse Police Department to inform the police of the occurrence and see if Holly Long was there.

25. During the entire search for Holly Long, Plaintiff was unaware that Holly Long was missing as Plaintiff was on a walk.

26. On said date and while on duty for Defendant City of White Hall, Defendant Elliott was approved to respond to a call in Defendant City of Roodhouse's corporate limits.

27. Defendant Elliott was asked to assist Defendant City of Roodhouse with a minor child who had been found at a park and later identified as Holly Long.

28. Defendant Elliott was asked to assist with said call by agents of Defendant City of Roodhouse.

29. Upon Defendant Elliott arriving at the scene, Defendant Gwartney had already made contact with Holly Long.

30. Defendant Gwartney and Elliott decided that Defendant Gwartney would canvass the area to find the minor's family and Defendant Elliott would take Holly Long to the Roodhouse Police Department.

31. On or about the time Defendant Elliott left with the minor child, Defendant Gwartney recalled seeing the minor child at the home of Mr. Hazelwood.

32. Defendant Gwartney went to Mr. Hazelwood's home where he made contact with Mr. and Mrs. Hazelwood.

33. Mr. and Mrs. Hazelwood informed Defendant Gwartney the family had been looking for Holly Long.

34. After leaving Defendant Gwartney and while on the way to the Roodhouse Police Department, Defendant Elliott contacted Defendant Robinson, the Chief of Police for Defendant City of Roodhouse.

35. After being contacted by Defendant Elliott, Defendant Robinson came to the Roodhouse Police Department.

36. Pursuant to an intergovernmental agreement between Defendant City of White Hall and Defendant City of Roodhouse, the chief of police or supervising officer is to oversee investigations when officers from outside the jurisdiction are used in an investigation.

37. Here, Defendant Robinson was the supervising officer, and at all relevant times was acting to supervise Defendant White Hall's officer, Defendant Elliott.

38. Based upon information and belief, Defendant Robinson was acting as a final policy maker for Defendant City of White Hall pursuant to the intergovernmental agreement.

39. Ms. Buck arrived at the Roodhouse Police Department within five minutes of Defendant Elliott arriving at the Roodhouse Police Department with Holly Long.

40. Ms. Buck informed Defendant Elliott the family of Holly Long had been searching for her.

41. Defendant Elliott directed Ms. Buck to have a parent of the minor child come to the police station.

42. Within two minutes of Ms. Buck leaving the Roodhouse House Police Department, Defendant Gwartney arrived at said police department.

43. Within ten minutes of Ms. Buck leaving the police station, Plaintiff Sprong arrived at the Roodhouse Police Department.

44.    After Defendant Gwartney arrived, Defendants Elliott and Robinson knew or had reason to believe Plaintiff was not with Mr. Long or near Holly Long when Holly Long went missing.

45.    Upon Plaintiff arriving, Plaintiff informed Defendant Gwartney she only became aware Holly Long had went missing when she came across Mr. Long and Ms. Buck on her walk. By that time, Ms. Buck had informed Mr. Long that Holly Long was at the police department.

46.    After receiving this information from Plaintiff, Defendant Gwartney left the room.

47.    Defendant Elliott began to question Plaintiff after Defendant Gwartney left the room.

48.    Defendant Elliott told Plaintiff he was investigating why the minor child was alone.

49.    Defendant Elliott further informed Plaintiff that Plaintiff's child was under protective custody.

### The Wrongful Arrest

50.    Defendant Elliott stated Holly Long was being detained while Defendant Elliott investigated Plaintiff and Mr. Long's respective roles in Holly Long going missing.

51.    Defendant Elliott demanded Plaintiff provide information to Defendant Elliott in an aggressive and threatening manner.

52.    Plaintiff invoked her right to silence and refused to answer questions from Defendant Elliott as he was being aggressive and threatening to Plaintiff.

53.    At some point, Plaintiff asserted she would speak to an officer other than Defendant Elliott.

54.    Defendant Elliott refused to allow Plaintiff to speak to another officer.

55. Based upon information and belief, Defendant Elliott engaged in surreptitious conduct meant to enrage or force a reaction from Plaintiff that would enable Defendant Elliott to arrest Plaintiff.

56. During Defendant Elliott's interrogation, Plaintiff requested that she be given her cell phone which was inside the Roodhouse Police Department to contact an attorney.

57. Defendant Elliott refused said request.

58. Defendant Elliott continued to question Plaintiff.

59. At some point during her interrogation, Plaintiff asked if she was under arrest.

60. Defendant Elliott stated that Plaintiff was not under arrest.

61. After hearing she was not under arrest, Plaintiff attempted to peacefully leave the Roodhouse Police Department without incident.

62. Plaintiff began walking down the ramp outside the Roodhouse Police Department, and Defendant Elliott grabbed Plaintiff and physically pulled her into the Roodhouse Police Department.

63. Thereafter, Plaintiff was placed under arrest for Obstructing Justice by Defendant Elliott.

64. Defendant Robinson and Gwartney were present and aware of Defendant Elliott's action during this incident.

65. Prior to placing Plaintiff under arrest, Defendant Elliott spoke to Defendant Robinson.

66. Defendant Robinson condoned, authorized, and later ratified Defendant Elliott's decision.

67. Upon being physically restrained and drug into the Roodhouse Police Department, Plaintiff attempted to complain to Defendant Robinson.

68. Defendant Robinson told Plaintiff to "shut up."

69. Thereafter, Plaintiff was taken to the Greene County Correctional Facility for processing on a charge of obstructing justice.

70. Notwithstanding the arrest, Plaintiff has never been charged with any crime in connection to the events of September 6, 2016.

71. Each and every individual defendant named herein engaged in conduct that was objectively unreasonable, undertaken intentionally, with malice and reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence. For the purpose of this Complaint, each and every individually named defendant shall mean Defendant Elliott, Coultas, Robinson, and Gwartney for the purposes of this Complaint.

72. Each and every individually named defendant acted within the scope of his employment during the relevant events.

73. After the wrongful arrest of Plaintiff, each and every defendants committed further violations of Plaintiff's rights.

74. As a direct and proximate result of Plaintiff's arrest for obstructing justice, Plaintiff's children were taken into protective custody by Defendant Robinson.

75. Defendant Robinson instructed Defendant Gwartney to take Holly Long from Plaintiff and place both of Plaintiff's children outside Plaintiff's custody and care.

**Withholding of Evidence after the Arrest**

76. On October 3, 2016, Plaintiff underwent a shelter care hearing related to the placement of her children with Illinois' Department of Children and Family Services.

77. At said hearing, Defendants Elliott and City of White Hall had not submitted Defendant Elliott's police report documenting the arrest of Plaintiff to the Greene County State's Attorney.

78. Based upon information and belief, Defendant Elliott's report was not even printed until the day of the hearing.

79. Based upon information and belief, Defendant Elliott's report was not sent to the Greene County State's Attorney's office until after the shelter care hearing began to frustrate a cross examination of Defendant Elliott.

80. At the shelter care hearing on October 3, 2016, Defendant Elliott testified that he previously provided Defendant Coultas with his police report.

81. Based upon information and belief, Defendant Coultas possessed said report, and the only action he took with the report was faxing or causing said report to be fax to the Greene County State's Attorney's Office after the shelter care hearing.

82. In addition to the report of Defendant Elliott that was withheld, Defendant Robinson created a police report about the incident that was never given to the Greene County State's Attorney's Office.

83. Based upon information and belief, Defendant Robinson' report was created after October 23, 2016.

84. On October 23, 2016, the Greene County Circuit Court indicated its disbelief that a crime existed which would allow an arrest of Plaintiff

85. Based upon information and belief and after the Circuit Court's ruling of October 23, 2016, Defendant City of Roodhouse, Defendant Robinson, and Defendant City of Roodhouse's agents sought to create probable cause for an arrest of Plaintiff under an entirely new theory.

86. Defendant City of Roodhouse began interviewing witnesses and taking statements to support a charge of disorderly conduct against Plaintiff related to the events of September 6, 2016.

87. These witness statements were purportedly created the first week of November 2016.

88. Based upon information and belief, Defendant Robinson and unknown agents of Defendant City of Roodhouse were involved in the attempt to create new probable to justify the wrongful arrest of Plaintiff.

89. Based upon information and belief, these witness statements did not produce the probable cause Defendant Robinson and City of Roodhouse sought to create.

90. In fact, the witness statements could be viewed as exculpatory evidence and at the very least impeachment evidence of the underlying accusation of obstructing justice.

91. Defendant Robinson's report and the witness statements were never forwarded to the Greene County State's Attorney's Office.

92. Based upon information and belief, these witness statement were not forwarded to the Greene County State's Attorney's Office because the witness statements did not assist Defendant City of Roodhouse in its pursuit of a conviction or prosecution against Plaintiff.

**Defendant City of White Hall and Roodhouse's Policies and Widespread Practices**

93. The constitutional violations that caused Plaintiff's injuries are verily believed to stem from policies and widespread practices of Defendants City of White Hall and Roodhouse.

94. Said violations were the result of what is believed to be Defendants City of White Hall and Roodhouse's widespread practices of pursuing convictions without regard to the truth, reliance on profoundly flawed investigations, withholding evidence, coercing statements, and incorrectly documenting information.

95. The constitutional violations that caused Plaintiff's injuries and the claims set forth in this Complaint were also the result of Defendants City of White Hall and Roodhouse's policies and widespread practices of failing to adequately train and supervise its police officers on the laws of the State of Illinois.

96. The constitutional violations that caused Plaintiff's injuries and the claims set forth in this Complaint were also the result of Defendants City of White Hall and Roodhouse's policies and widespread practice of failing to train its officers on probable cause and reasonable use of force.

97. The constitutional violations that caused Plaintiff's injuries and the claims set forth in this Complaint were also the result of Defendants City of White Hall and Roodhouse's policies and widespread practices of failing to intervene to prevent individual officers from violating citizens' constitutional rights.

98. Based upon information and belief and in accordance with these policies and widespread practices, Defendants City of White Hall and Roodhouse's police officers refused to report misconduct committed by their colleagues, including the misconduct at issue in this case.

99. Defendants City of White Hall and Roodhouse's failure to train, supervise, and discipline its officers and employees effectively condones, ratifies, and sanctions the kind of misconduct that Defendants Elliott, Coultas, Robinson, and Gwartney committed against Plaintiff in this case.

100. Constitutional violations such as those that occurred in this case are encourage and facilitated as a result of Defendants City of White Hall and Roodhouse's practices and policies aforementioned.

### Plaintiff's Damages

101. As a direct and proximate result of the misconduct herein described, Plaintiff sustained a harmful and offensive contact and was jailed for several hours the night of September 6, 2016.

102. As a result of Plaintiff's arrest, Plaintiff's daughter, Holly Long, and son, Andrew Long, Jr., were placed outside her custody and care.

103. Plaintiff was without custody and care of her minor children for forty-two days.

104. The minor children were only returned to Plaintiff when a Greene County Court ordered the State of Illinois to return said minor children.

105. Although Plaintiff was never charged with a crime, Plaintiff was forced to undergo civil proceedings involving the Department of Children and Family Services (hereinafter "DCFS") based upon the report and unlawful arrest by Defendants.

106. That Plaintiff suffered anxiety, fear, mental anguish, and emotional distress as a direct and proximate result of Defendants action herein described.

107. As a direct and proximate result of the arrest and misconduct herein alleged, Plaintiff lost her employment, and based upon information and belief, Plaintiff was evicted from her home because of the allegations made against her and published in the Greene Prairie Press.

## Count I
## Battery
## (vs. CHRIS ELLIOTT, Individually, and as an agent of CITY OF ROODHOUSE and CITY OF WHITE HALL)

108. Plaintiff restates and incorporates paragraphs 1-108 of this Complaint as if fully set forth herein.

109. On September 6, 2016, Defendant Elliott, made a harmful and offensive contact with Plaintiff, and Defendant Elliott did not have legal justification to do so.

110. The contact with Plaintiff caused her physical pain and emotional damages.

111. Defendant Elliott's harmful and offensive contact with Plaintiff was the proximate cause of Plaintiff's damages.

112. The misconduct described in this Count was undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

113. Defendant Elliott at all times relevant acted under color of law and within his employment with Defendant City of White Hall such that Defendant City of White Hall is liable for his actions.

114. Defendant Elliott at all times relevant was acting on behalf of and at the direction of Defendant City of Roodhouse such that Defendant City of Roodhouse is liable for his actions.

## Count II
### False Imprisonment
**(vs. ELLIOTT, Individually, and as an agent of CITY OF ROODHOUSE and CITY OF WHITE HALL, ROBINSON, Individually and as an agent of CITY OF ROODHOUSE, CITY OF ROODHOUSE, and CITY OF WHITE HALL)**

115. Plaintiff restates and incorporates paragraphs 1-108 of this Complaint as if fully set forth herein.

116. On September 6, 2016, Defendant Elliott restrained Plaintiff.

117. Defendant Elliott acted without having reasonable grounds to believe that the Plaintiff had committed a crime and otherwise lacked legal justification.

118. Plaintiff's unlawful restraint caused her damages.

119. As a result of the injury, Plaintiff sustained damages herein described.

120. The actions of the Defendants herein named were the proximate cause of Plaintiff's damages.

121. At all times relevant, Defendant Robinson was the Chief of Police for the City of Roodhouse.

122. Defendant Robinson had a duty to prevent the restraint of an individual without legal justification.

123. Notwithstanding his duty to the contrary, Defendant Robinson consented to, condoned, and otherwise encouraged the restraint of Plaintiff.

124. Defendant Elliott and Robinson's misconduct described in this Count was undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

125. Defendant Elliott at all times relevant acted under color of law and within his employment with Defendant City of White Hall such that Defendant City of White Hall is liable for his actions.

126. Defendant Elliott at all times relevant was acting on behalf of and at the direction of Defendant City of Roodhouse such that Defendant City of Roodhouse is liable for his actions.

**Count III**
**Intentional Infliction of Emotional Distress**
**(vs. ALL DEFENDANTS)**

127. Plaintiff restates and incorporates paragraphs 1-108 of this Complaint as if fully set forth herein.

128. Each and every individually named defendant acted to support the other in the unlawful detention, wrongful arrest, coercion of witness, incorrect documentation of information, and withholding exculpatory or impeachment evidence; thus, each and every individually named defendant engaged in extreme and outrageous conduct.

129. Each and every individually named defendant's actions were rooted in an abuse of power.

130. Each and every individually named defendant's actions were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

131. Each and every individually named defendant's actions were undertaken with malice, willfulness, and reckless indifference to the rights of others.

132. The misconduct described in this Count was undertaken by the individual defendants within the scope of their employment and under color of law such that their employers, Defendant City of White Hall and City of Roodhouse, are liable for their actions.

133. As a direct and proximate result of the misconduct described in this Count, Plaintiff suffered injuries and damages.

### Count IV
### *Respondent Superior*
### (vs. ALL DEFENDANTS)

134. Plaintiff restates and incorporates paragraphs 1-108 of this Complaint as if fully set forth herein.

135. In committing the acts alleged in the preceding Count and paragraphs, each and every individually named defendants were employees, members, and agents of Defendant City of White Hall and Roodhouse acting at all relevant times within the scope of their employment.

136. Therefore, Defendants City of White Hall and Roodhouse are liable as principals for all torts committed by their agents.

### Count V
### *Respondent Superior*
### (vs. ALL DEFENDANTS)

137. Plaintiff restates and incorporates paragraphs 1-108 of this Complaint as if fully set forth herein.

138. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

139. Each and every individually named defendants are employees of Defendant City of White Hall or Roodhouse, and acted within the scope of their employment in committing the misconduct.

140. Defendants City of White Hall and Roodhouse are therefore obligated to pay any judgment entered against their respective employees in this case.

**Count VI-42 U.S.C. § 1983**
**Unlawful Detention and Arrest**
**(vs. ELLIOTT, ROBINSON, GWARTNEY, CITY OF ROODHOUSE, and CITY OF WHITEHALL)**

141. Plaintiff restates and incorporates paragraphs 1-108 of this Complaint as if fully set forth herein.

142. That this matter is brought pursuant to 42 USC § 1983, which provides an avenue for plaintiffs to file for violations of the United States Constitution.

143. That pursuant to the Fourth and Fourteenth Amendment, Plaintiff has a right against unlawful seizure of the person.

144. That Defendant Elliott unlawfully detained Plaintiff.

145. Thereafter, Defendant Elliott unlawfully arrested Plaintiff without a warrant or probable cause.

146. The actions of Defendant Elliott herein described were known to Defendant Robinson who was a final policy maker for Defendant City of Roodhouse.

147. The actions of Defendant Elliott herein described were known to Defendant Gwartney.

148. Based upon information and belief, Defendant Gwartney consented and approved of the actions of Defendant Elliott during all relevant times.

149. Defendant Gwartney consented and approved of the actions even though he possessed actual knowledge Defendant Elliott was violating the rights of Plaintiff.

150. Defendant Robinson and Gwartney allowed the constitutional violations to occur, and thereby, each condoned the misconduct.

151. As Defendant Robinson is a final policy maker with Defendant City of Roodhouse, Defendant City of Roodhouse is liable for the actions of its final policy maker.

152. Here, Defendant Robinson's actions allowed Plaintiff's rights to be violated.

153. The misconduct described in this Count was undertaken by Defendant Elliott, Robinson, and Gwartney within the scope of their employment and under color of law such that their employers, Defendants City of White Hall and City of Roodhouse, are liable.

154. The misconduct described in this count is verily believed to be a policy and practice of Defendant City of White Hall's officers in that the Defendant City of White Hall and its officers have a policy, practice, and custom of involuntarily detaining and arresting those without probable cause.

155. Defendant City of White Hall has failed to act to remedy the pattern of abuse described in the preceding paragraph against its officers, despite knowledge of the same, thereby causing the types of injuries alleged here.

156. Defendants Elliott, Robinson, Gwartney, City of Roodhouse, and City of White Hall's actions were the proximate cause of Plaintiff's damages.

**Count VII-42 U.S.C. § 1983**
**Excessive Force**
**(vs. ELLIOTT, ROBINSON, GWARTNEY, CITY OF ROODHOUSE, and CITY OF WHITEHALL)**

157. Plaintiff restates and incorporates paragraphs 1-108 of this Complaint as if fully set forth herein.

158. This matter is brought pursuant to 42 USC § 1983, which provides an avenue for Plaintiffs to file for violations of the United States Constitution.

159. Pursuant to the Fourth and Fourteenth Amendment, Plaintiff has a right against unlawful seizure of the person.

160. Plaintiff posed no immediate threat to Defendant Elliott at the time Defendant Elliott made his harmful and offensive contact with Plaintiff.

161. Defendant Elliott's actions were excessive given the severity of the alleged crime.

162. The nature and the quality of the intrusion by Defendant Elliott were excessive given the totality of the circumstances.

163. The actions of Defendant Elliott herein described were known to Defendant Robinson who was the final policy maker for Defendant City of Roodhouse.

164. The actions of Defendant Elliott herein described were known to Defendant Gwartney.

165. Defendant Gwartney consented and approved of the actions of Defendant Elliott during all relevant times.

166. Defendant Gwartney consented and approved of the actions even though he knew Defendant Elliott was violating the rights of Plaintiff.

167. Defendant Robinson and Gwartney allowed the constitutional violations to occur, thereby condoning those violations.

168. As Defendant Robinson is a final policy maker with Defendant City of Roodhouse, Defendant City of Roodhouse is liable for the actions of its final policy maker.

169. Here, Defendant Robinson's actions allowed Plaintiff's rights to be violated.

170. The misconduct described in this Count was undertaken by Defendant Elliott, Robinson, and Gwartney within the scope of their employment and under color of law such that their employers, Defendants City of White Hall and City of Roodhouse, are liable.

171. Based upon information and belief, the misconduct described in this count is a policy and practice of Defendant City of White Hall's officers in that the Defendant City of White Hall and its officers has a policy, practice, and custom of using excessive force against individuals.

172. Defendant City of White Hall has failed to act to remedy the pattern of abuse by its officers described in the preceding paragraph, despite knowledge of the same, thereby causing the types of injuries alleged here.

173. Defendants Elliott, Robinson, Gwartney, City of Roodhouse, and City of White Hall's actions were the proximate cause of Plaintiff's damages.

**Count VIII-42 U.S.C. § 1983**
**Conspiracy to Deprive Constitutional Rights**
**(vs. ELLIOTT, COULTAS, ROBINSON, and GWARTNEY)**

174. Plaintiff restates and incorporates paragraphs 1-108 of this Complaint as if fully set forth herein.

175. This matter is brought pursuant to 42 USC § 1983, which provides an avenue for Plaintiffs to file for violations of the United States Constitution.

176. Based upon information and belief, Defendants Elliott, Coultas, Robinson, and Gwartney acted in concert with one or more co-conspirators, and reached an agreement or understanding to deprive Plaintiff of her constitutional rights.

177. Based upon information and belief, these Defendants conspired to accomplish an unlawful purpose, or to accomplish a lawful purpose by an unlawful means, namely prosecuting

Plaintiff for a crime without probable cause and preventing the Circuit Court from discovery information which would lead to the conclusion that placement of Plaintiff's children away from Plaintiff was unnecessary.

178. In furtherance of their conspiracy, one or more of the co-conspirators committed an overt act, and each was a willful participant in joint activity.

179. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff's constitutional rights.

180. As a result of Defendants Elliott, Coultas, Robinson, and Gwartney's misconduct described in this County, Plaintiff suffered loss of liberty, injury, and emotional harm.

### Count IX-42 U.S.C. § 1983
### Failure to Intervene
### (vs. ROBINSON, GWARTNEY, COULTAS, CITY OF ROODHOUSE, and CITY OF WHITEHALL)

181. Plaintiff restates and incorporates paragraphs 1-108 of this Complaint as if fully set forth herein.

182. During the constitutional violations described in the preceding Counts and paragraphs, Defendant Robinson and Gwartney failed to intervene to prevent the violations of Plaintiff's rights, even though they had a duty and opportunity to do so.

183. Defendant Coultas received the police report from Defendant Elliott after the arrest but before the shelter care hearing.

184. Defendant Elliott's report outlines a violation of Plaintiff's constitutional rights on the face of the document.

185. Defendant Coultas nonetheless refused to intervene or correct the actions of Defendant Elliott.

186. Based upon information and belief, Defendant Coultas or an agent acting on his behalf forwarded the report to the Greene County State's Attorney on October 3, 2016 for prosecution.

187. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff's constitutional rights.

188. The misconduct described in this Count included the actions of final policy makers for Defendants City of White Hall and Roodhouse. In this way, Defendants City of White Hall and Roodhouse violated Plaintiff's rights through the actions of its final policy makers.

189. In the alternative, the misconduct described in this Count is verily believed to be undertaken pursuant to the policies and practices of Defendants City of White Hall and Defendant City of Roodhouse. In this way, Defendants City of White Hall and City of Roodhouse also violated Plaintiff's rights through the actions of their agents and employees by maintaining policies and practices that were a moving force behind the constitutional violations.

190. As a result of Defendants misconduct described in this Count, Plaintiff suffered loss of liberty, injury, and emotional harm.

### Count X-42 U.S.C. § 1983
### Inadequate Training
### (vs. CITY OF ROODHOUSE)

191. Plaintiff restates and incorporates paragraphs 1-108 of this Complaint as if fully set forth herein.

192. That this matter is brought pursuant to 42 USC § 1983, which provides an avenue for plaintiffs to file for violations of the United States Constitution.

193. That Defendant Elliott's job duties include training as to the law of the State of Illinois, probable cause, and the correct use of force.

194. That Defendant City of Roodhouse did not train Defendant Elliott on the law of the State of Illinois, probable cause, and the correct use of force

195. That failure to adequately train officers in these areas would carry a high risk that an individual's rights would be violated.

196. The failure to train officers in the areas of probable cause and use of force is deliberate indifference.

197. Defendant City of Roodhouse's action in failing to properly train its officers and officers it requests to engage in law enforcement duties was the proximate cause of Plaintiff's damages.

### Count XI-42 U.S.C. § 1983
### Inadequate Supervision and Discipline
### (vs. ROBINSON and CITY OF ROODHOUSE)

198. Plaintiff restates and incorporates paragraphs 1-108 of this Complaint as if fully set forth herein.

199. That this matter is brought pursuant to 42 USC § 1983, which provides an avenue for plaintiffs to file for violations of the United States Constitution.

200. Defendant Robinson had a duty to supervise and monitor police officers acting on behalf of Defendant City of Roodhouse.

201. Defendant Robinson was present during Defendant Elliott's unlawful arrest of Plaintiff, which started Plaintiff's injuries.

202. Subsequent to Defendant Elliott's use of excessive force and wrongful arrest against Plaintiff, Defendant Robinson failed to remove Defendant Elliott from the investigation of Plaintiff.

203. Defendant Robinson failed to request or create an investigation into Defendant Elliott's actions against Plaintiff.

204. Defendant Robinson condoned and encouraged Defendant Elliott's actions against Plaintiff on September 6, 2016.

205. Defendant Elliott has not been disciplined for his excessive use of force and unlawful arrest.

206. Defendant City of Roodhouse and Defendant Robinson had a duty to ensure all officers acting for Defendant City of Roodhouse were trained on probable cause and use of force.

207. Defendant City of Roodhouse and Defendant Robinson had a duty to discipline and correct misconduct of officers who violate individuals' rights.

208. The failure to adequately supervise and discipline Defendant Elliott, created a high risk that an individual's rights would be violated.

209. That failure to adequately supervise and discipline Defendant Elliott is deliberate indifference.

210. As a final policy maker for Defendant City of Roodhouse, Defendant Robinson's action are imputed upon Defendant City of Roodhouse.

211. Defendant City of Roodhouse and Robinson's actions in failing to properly supervise and discipline its officers were the proximate cause of Plaintiff's damages.

**Count XII-42 U.S.C. § 1983**
**Inadequate Training**
**(vs. CITY OF WHITE HALL)**

212. Plaintiff restates and incorporates paragraphs 1-108 of this Complaint as if fully set forth herein.

213. That this matter is brought pursuant to 42 USC § 1983, which provides an avenue for plaintiffs to file for violations of the United States Constitution.

214. That Defendant Elliott's job duties include training as to the law of the State of Illinois, probable cause, and the correct use of force.

215. That Defendant City of White Hall did not train Defendant Elliott on the law of the State of Illinois, probable cause, and the correct use of force

216. That failure to adequately train officers in these areas would carry a high risk that an individual's rights would be violated.

217. The failure to train officers in the areas of probable cause and use of force is deliberate indifference.

218. Defendant City of White Hall's action in failing to properly train its officers was the proximate cause of Plaintiff's damages.

## Count XIII-42 U.S.C. § 1983
### Inadequate Supervision and Discipline
### (vs. COULTAS and CITY OF WHITE HALL)

219. Plaintiff restates and incorporates paragraphs 1-108 of this Complaint as if fully set forth herein.

220. That this matter is brought pursuant to 42 USC § 1983, which provides an avenue for plaintiffs to file for violations of the United States Constitution.

221. Defendant Coultas had a duty to supervise and monitor police officers acting on behalf of Defendant City of White Hall.

222. Defendant Coultas was not physically present during Defendant Elliott's unlawful arrest of Plaintiff, which started Plaintiff's injuries.

223. Subsequent to Defendant Elliott's use of excessive force and wrongful arrest against Plaintiff, Defendant Coultas was made aware of the wrongful arrest by Defendant Elliott's report.

224. Defendant Coultas failed to remove Defendant Elliott from the investigation of Plaintiff.

225. Defendant Coultas failed to request or create an investigation into Defendant Elliott's actions against Plaintiff.

226. Defendant Coultas condoned and ratified Defendant Elliott's actions on September 6, 2016 by sending the report to the Greene County State's Attorney's office for prosecution.

227. Defendant Elliott has not been disciplined for his excessive use of force and unlawful arrest.

228. Defendant City of White Hall and Defendant Coultas had a duty to ensure all officers acting for Defendant City of White Hall were trained on probable cause and use of force.

229. Defendant City of White Hall and Defendant Coultas had a duty to discipline and correct misconduct of officers who violate individuals' rights.

230. The failure to adequately supervise and discipline Defendant Elliott, created a high risk that an individual's rights would be violated.

231. That failure to adequately supervise and discipline Defendant Elliott is deliberate indifference.

232. As a final policy maker for Defendant City of White Hall, Defendant Coultas' actions are imputed upon Defendant City of White Hall.

233. Defendant City of White Hall and Coultas' actions in failing to properly supervise and discipline its officers were the proximate cause of Plaintiff's damages.

WHEREFORE, Plaintiff, KELSEY SPRONG, respectfully requests that this Court enter a judgment in her favor and against Defendants, CHRIS ELLIOTT, LUKE COULTAS, JEREMY GWARTNEY, KYLE ROBINSON, CITY OF WHITE HALL, ILLINOIS, and CITY OF ROODHOUSE, ILLINOIS, awarding compensatory damages and attorneys' fees and costs against each Defendant, punitive damages against each of the individually named Defendants, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, KELSEY SPRONG, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully Submitted,

**KELSEY SPRONG,**

By:    /s/ Edward W. Unsell #3124228
Joshua R. Evans #6318288
The Unsell Law Firm
Attorneys for Plaintiff
69 South Ninth Street
East Alton, IL 62024
(618) 259-3728
unselllaw@hotmail.com